UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| QUINTON SWANSON, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } CASE NO. 2:09-cv-2148-SLB |
| | } |
| ALLSTATE INDEMNITY COMPANY, | } |
| | } |
| Defendant. | } |

## MEMORANDUM OPINION

This case is currently before the court on plaintiff Quinton Swanson's ("Swanson") Motion to Compel Depositions and Third Motion to Compel Documents, (Doc. 31),[1] defendant Allstate Indemnity Company's ("Allstate") Motion for Protective Order, (Doc. 38), and Swanson's Rule 56(f) Motion to Continue Summary Judgment Until After Taking of Allstate Depositions, (Doc. 39). Swanson has filed suit against Allstate, alleging breach of an insurance contract, bad faith, and misrepresentation. (Doc. 25 at ¶¶ 10-29.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court finds that Swanson's Rule 56(f) Motion to Continue Summary Judgment Until After Taking of Allstate Depositions is due to be granted in part and denied in part, his Motion to Compel Depositions and Third Motion to Compel Documents is due

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

to be granted in part and denied in part, and Allstate's Motion for Protective Order is due to be granted in part and denied in part.

## I. FACTUAL AND PROCEDURAL HISTORY

Briefly, the facts are that Swanson purchased a Deluxe Homeowners Policy (the "Policy") from Allstate, which covered property owned by Swanson (the "Property"). (Doc. 25 at ¶ 5; Doc. 33 at Ex. A.) To finance the Property, Swanson executed a mortgage in favor of Washington Mutual Bank ("Washington Mutual"). (Doc. 33, Ex. B at 40:22-41:7.)

On September 19, 2008, a fire destroyed the Property. (Doc. 25 at ¶ 7.) Swanson's Policy was in effect at that time. (*Id.* at ¶ 6.) Swanson notified Allstate of the fire, and Allstate opened an investigation. (*Id.* at ¶ 8; Doc. 33 at Ex. C.)

During the investigation, Allstate learned that both the Birmingham Fire Department and the Birmingham Police Department had determined that the fire was the result of arson. (Doc. 33 at Exs. D & E.) Through its own investigation, Allstate reached the same conclusion. (*Id.*, Ex. F at 5.) Swanson does not dispute that the fire was intentionally set, but denies any involvement. (Doc. 33, Ex. B at 133:23-134:6.) Instead, Swanson opines that someone broke into the Property and set the fire. (*Id.*, Ex. B at 134:7-15.)

Allstate also determined that the Property had been vacant for over one year prior to the fire. (*See id.*, Ex. B at 10:7-16.) Indeed, Swanson informed Allstate that the Property's utilities had been shut off for months. (*Id.*, Ex. G at 10-11.)

Swanson's Policy contains several exclusions, including an exclusion for certain acts of "Vandalism or Malicious Mischief." (*See id.*, Ex. A at 28-31.) The Policy provides that:

In addition, **we** do not cover loss consisting of or caused by any of the following:

. . . .

20.  Vandalism or Malicious Mischief if **your dwelling** is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

(*Id.*, Ex. A at 30.)

Citing the Policy's "Vandalism or Malicious Mischief" exclusion, and relying on the advice of counsel, Sue Williamson, Allstate denied Swanson's claim on April 28, 2009. (*Id.* at Exs. J & K; Doc. 25 at ¶ 9.) In response, Swanson filed suit against Allstate in the Circuit Court for Jefferson County, Alabama, which Allstate later removed on October 21, 2009. (Doc. 1 at 1.) Subsequently, on May 28, 2010, Swanson filed an Amended Complaint, which asserts three causes of action, including Count I, breach of an insurance contract, Count II, bad faith, and Count III, misrepresentation. (Doc. 25 at ¶¶ 10-24.)

During discovery, Swanson and Allstate reached an impasse as to whether certain information could be discovered, and certain depositions taken. (*See* Doc. 10; Doc. 24; Doc. 31.) As a result, on June 16, 2010, Swanson filed a Motion to Compel Depositions and Third Motion to Compel Documents. (Doc. 31.) Allstate opposes the Motion, and filed a Response to Plaintiff's Motion to Compel and Defendant's Motion for Protective Order on June 30, 2010. (Doc. 38.)

3

In addition, Allstate also filed a Motion for Final Summary Judgment, (Doc. 33), which, because of the discovery disputes, prompted Swanson, on July 2, 2010, to file a Rule 56(f) Motion to Continue Summary Judgment Until After Taking of Allstate Depositions, (Doc. 39).[2]  Allstate thereafter filed a Response to Plaintiff's Rule 56(f) Motion to Continue Summary Judgment Until After Taking of Allstate Depositions on July 23, 2010.  (Doc. 41.)  Then, on August 6, 2010, Swanson filed a Reply to Defendant's Response to Plaintiff's Rule 56(f) Motion to Continue Summary Judgment Until After Taking of Allstate Depositions. (Doc. 42.)  The court held oral argument on August 24, 2010.

## II. **DISCUSSION**

**A.  SWANSON'S RULE 56(f) MOTION TO CONTINUE SUMMARY JUDGMENT UNTIL AFTER TAKING OF ALLSTATE DEPOSITIONS, (DOC. 39)**

In his Rule 56(f) Motion, Swanson argues that the court should continue Allstate's Motion for Final Summary Judgment until after Swanson has taken the depositions requested in his Motion to Compel, (Doc. 31).[3]  (Doc. 39 at 1.)

---

[2] Swanson had earlier filed a separate Motion to Hold Summary Judgment in Abeyance Until After Taking of Allstate Depositions, (Doc. 36), which, because of procedural deficiencies, the court denied, (*see* Doc. 37).  However, the court's Order was entered without prejudice to Swanson's right to refile a Rule 56(f) motion.  (*Id.* at 3.)

[3] The requested depositions are: (1) Mike Rocchio, the claims adjuster assigned to Swanson's claim, (2) Michael Simpson, Rocchio's manager, (3) Sue Williamson, the coverage attorney who recommended denying Swanson's claim, and (4) a Rule 30(b)(6) witness.  (Doc. 31 at 2.)

4

Rule 56(f) of the Federal Rules of Civil Procedure provides the applicable procedure for a party who believes additional discovery is necessary to respond to a motion for summary judgment, providing that:

> If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> **(1)** deny the motion;
> **(2)** order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> **(3)** issue any other just order.

Fed. R. Civ. P. 56(f). The United States Court of Appeals for the Eleventh Circuit has further clarified Rule 56(f), noting that:

> A Rule 56(f) motion must be supported by an affidavit which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment. Whether to grant or deny a Rule 56(f) motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party.

*Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998) (internal citations omitted).

Here, Swanson asserts that, "[t]hrough taking the requested depositions, [he] expects to discover the following facts which will create a genuine issue of material fact precluding summary judgment:" (1) "Facts Relating to Issuance and Delivery of the Policy," (2) "Facts Relating to Allstate's Failure to Pay-off Swanson's Mortgagee Pursuant to the Standard Mortgage Clause of its Policy," (3) "Facts Relating to the Ambiguity of the Vandalism and Malicious Mischief Exclusion and Allstate's Knowledge of this Ambiguity," (4) "Facts

5

Relating to Swanson's Bad Faith Claim and Allstate's Investigation," and (5) "Facts Relating to Plaintiff's Misrepresentation Claim." (*Id.* at 5-27.) The court will address each of Swanson's arguments in turn.

1.  Facts Relating to Issuance and Delivery of the Policy

Initially, Swanson argues that additional discovery is necessary because Allstate has produced only an exemplar policy, and, moreover, "has produced no proof that it mailed the policy to Mr. Swanson." (*Id.* at 6-7.) As such, Swanson submits that, under section 27-14-19 of the Alabama Code, "[i]f Allstate did not mail [him] a copy of his policy and he was prejudiced by this failure, then Allstate would be precluded from asserting the exclusions it has forwarded in this case," preventing summary judgment. (*Id.* at 7.)

Section 27-14-19(a) of the Alabama Code states that:

> Subject to the insurer's requirements as to payment of the premium, every policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance, except where a condition required by the insurer has not been met by the insured.

Ala. Code § 27-14-19(a) (1975). Construing the statute, the Supreme Court of Alabama held that "when an insurer has not complied with § 27-14-19 and its failure to comply has prejudiced the insured, the insurer may be estopped from asserting an otherwise valid coverage exclusion." *Brown Mach. Works & Supply Co., Inc. v. Ins. Co. of N. Am.*, 659 So. 2d 51, 58 (Ala. 1995).

In its Response to Plaintiff's Rule 56(f) Motion, Allstate argues that "[its] employee, Linda Sisson, certified that the policy produced to the Plaintiff was the policy issued to the Plaintiff," and further argues that Swanson produced his own copy of the Policy during discovery, which demonstrates that he received a copy. (Doc. 41 at 2-3.) Additionally, Allstate has also filed an "electronic proof of mailing," which it alleges "clearly reflects the date Plaintiff's policy was mailed to him on September 9, 2002." (*Id.* at 3-4.)

In his Reply, Swanson states that he did not receive the Policy he produced during discovery until after Allstate denied his claim. (Doc. 42 at 2, Ex. A at ¶ 4.) Indeed, in an Affidavit attached to his Reply, Swanson attests that "[he] did not have a copy of th[e] policy before [Allstate denied his claim]," and that "[he] do[es] not believe that [he] ever received a copy of [his] homeowner's policy from Allstate." (*Id.*, Ex. A at ¶ 4.) In addition, Swanson also insists that Allstate's "unauthenticated" electronic proof of mailing "does not say anything about mailing and does not support Allstate's counsel's assertions." (*Id.* at 2.)

As stated during the August 24, 2010 hearing, while the court disagrees that additional discovery is warranted with respect to whether the exemplar policy is the same as Swanson's Policy, the court agrees that more discovery is necessary with respect to whether Allstate mailed the Policy to Swanson. Swanson is correct that Allstate's "electronic proof of mailing" is both "unauthenticated and ambiguous." (Doc. 42 at 2; *see* Doc. 41 at Ex. C.) Allstate's contention that it "clearly reflects the date Plaintiff's policy was mailed to him on September 9, 2002," (Doc. 41 at 3-4), is simply incorrect. Although the September 9, 2002

7

date appears on the document, the document remains silent as to what exactly occurred on that day. (*See id.* at Ex. C.) Therefore, Swanson's Rule 56(f) Motion is due to be granted to the extent it requests that the court continue Allstate's Motion for Final Summary Judgment until after Swanson conducts additional discovery on the issue of whether Allstate mailed the Policy to Swanson.

2. <u>Facts Relating to Allstate's Failure to Pay-off Swanson's Mortgagee Pursuant to the Standard Mortgage Clause of its Policy</u>

For his second argument, Swanson asserts that "not only has Allstate refused to pay [his] claim, but Allstate has refused to pay [his] mortgagee," Washington Mutual. (Doc. 39 at 9.) Swanson argues that Allstate's duty to pay Washington Mutual "is unrelated to the denial of Mr. Swanson's individual claim," yet, "without any apparent basis in the contract, Allstate requires the insured and mortgagee to demonstrate that the insured is no longer making payments on the mortgage." (*Id.* at 10-11.) According to Swanson, "[n]o language in the policy requires that the insured breach his contract with the mortgage company by ceasing payments or that the mortgage company be required to prove that the mortgagor is no longer making payments." (*Id.* at 14.) Therefore, Swanson argues that discovery will demonstrate that Allstate wrongfully failed to pay Washington Mutual, and that "these facts would not only preclude summary judgment to Allstate, but possibly entitle Swanson to summary judgment on his breach of contract claim and provide evidence for his bad faith claim." (*Id.* at 15.)

In pertinent part, the Policy provides:

18. **Mortgagee**

A covered loss will be payable to the mortgagees named on the Policy Declarations, to the extent of their interest and in order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

> **We** will:
> a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
> b) give the mortgagee at least 10 days notice if **we** cancel this policy.
>
> The mortgagee will:
> a) furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;
> b) pay upon demand any premium due if an **insured person** fails to do so;
> c) notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
> d) give **us** the mortgagee's right of recovery against any party liable for loss; and
> e) after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

(Doc. 33, Ex. A at 41-42.)

To be sure, the court agrees that the Policy's standard mortgage clause places an independent duty on Allstate, separate from its duty to Swanson, to protect Washington Mutual's interest in the Property. *See Int'l Surplus Lines Ins. Co. v. Assocs. Commercial Corp.*, 514 So. 2d 1326, 1327 (Ala. 1987) ("Under a standard mortgage clause 'an independent or separate contract or undertaking exists between the mortgagee and the insurer, which contract is measured by the terms of the mortgage clause itself. There are

accordingly in substance two contracts of insurance, the one with the mortgagee, and the other with the mortgagor.'" (quoting 10A *Couch on Insurance 2d* § 42:728 (rev. ed. 1982)). And, the court also agrees that, even if an exclusion in the Policy precludes recovery as to Swanson, under the standard mortgage clause, Washington Mutual's interest would remain. *See id.* at 1328 ("[W]here, as here, the loss was at least arguably within the coverage afforded by insurance and the breach of the policy provision came about as a result of the wrongful act of the insured or his agent, servant, or employee, the mortgagee's interest under a standard mortgage clause will not be defeated.") However, assuming *arguendo*, as Swanson contends, that Allstate's obligation to pay-off Washington Mutual arose at the time of loss,[4] and that Swanson's subsequent mortgage payments to Washington Mutual constitute recoverable damages for Allstate's breach of that obligation, it remains that neither Swanson's Complaint, nor his Amended Complaint, plead a breach of contract cause of action for Allstate's failure to pay Washington Mutual,[5] (*see generally* Doc. 1 at Ex. A; Doc. 25 at ¶¶ 10-25); *see also* Memorandum Opinion at 8 n.3, *Seagle v. Allstate Ins. Co.*, No. 05-

---

[4] Although the court agrees that, under the general rule, "at the time of the loss [Washington Mutual] acquired an interest in the insurance proceeds to the extent of the outstanding mortgage on [Swanson's] property," *see Ala. Farm Bureau Mut. Cas. Ins. Co., Inc. v. Williams*, 530 So. 2d 1371, 1375 (Ala. 1988), the court finds the Policy's standard mortgage clause to be ambiguous as to what Allstate must do, and when it must act, to protect that interest, (*see* Doc. 33, Ex. A at 41-42); *see also* Memorandum Opinion at 10, *Seagle v. Allstate Ins. Co.*, No. 05-cv-1668-SLB (N.D. Ala. filed Sept. 30, 2007).

[5] Indeed, the Amended Complaint does not reference the Policy's standard mortgage clause, Washington Mutual, or Allstate's failure to pay Washington Mutual. (See generally Doc. 25.)

cv-1668-SLB (N.D. Ala. filed Sept. 30, 2007),[6] and the Scheduling Order's deadline for amending the pleadings has passed, (*see* Doc. 7 at ¶ 11).[7] As such, Swanson's second argument is unpersuasive.

3. <u>Facts Relating to the Ambiguity of the Vandalism and Malicious Mischief Exclusion and Allstate's Knowledge of this Ambiguity</u>

Next, Swanson maintains that the Policy's Vandalism or Malicious Mischief exclusion, relied upon by Allstate to deny Swanson's claim, is ambiguous. (Doc. 39 at 18.) He points out that Allstate's own employee, Michael Simpson, recognized that the exclusion may be ambiguous under Alabama law, but that Allstate failed to address the issue prior to denying his claim. (*Id.* at 20.) Swanson therefore argues that discovery will reveal a genuine

---

[6] Additionally, the court notes that, prior to filing his Rule 56(f) Motion, Swanson had not sought discovery on this issue. (*See generally* Docs. 10, 24 & 31.) Indeed, neither the interrogatories nor the requests for production sought by his Third Motion to Compel Documents specifically reference Allstate's obligation to pay Washington Mutual, or mention the Policy's standard mortgage clause. (*See generally* Doc. 31 at Ex. B.) Also, while Swanson states in his Rule 56(f) Motion that he seeks to discover facts regarding Allstate's failure to pay Washington Mutual through the requested depositions, (*see* Doc. 39 at 5, 8-15), the court notes that, in his Motion to Compel Depositions, Swanson likewise did not reference Allstate's obligation to pay Washington Mutual, or mention the Policy's standard mortgage clause, (*see* Doc. 31 at 4-5 ("Plaintiff wishes to depose these witnesses to seek discoverable information about Mr. Swanson's insurance policy, communications between the parties, the investigation of Mr. Swanson's claim, the denial of Mr. Swanson's claim, Allstate's reasons for denial, and the calculation of the amount of Mr. Swanson's dwelling coverage.")).

[7] To be sure, even if Swanson's Amended Complaint included a cause of action for Allstate's breach of the Policy's standard mortgage clause, given the discovery that Allstate has already produced, the court finds that Swanson has failed to satisfy his burden of demonstrating that his need for additional discovery on this issue outweighs the burden such discovery would place on Allstate. *See James*, 157 F.3d at 1280.

issue of material fact as to whether Allstate knowingly relied on an ambiguous portion of the Policy in denying his claim, which Swanson submits would not only preclude summary judgment on his breach of contract claim, but also his bad faith claim. (*See id.* at 5, 21.)

As the court stated during oral argument, the Policy's Vandalism or Malicious Mischief exclusion is not ambiguous. Rather, assuming as the court must, that an unknown person intentionally set the fire, the court finds that such an act would unambiguously constitute "vandalism" or "malicious mischief" to the Property, which, as Swanson acknowledges, (*see* Doc. 33, Ex. B at 10:7-16, Ex. G at 10-11), had been "vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief," (*see id.*, Ex. A at 30).[8] And, because the question of "'[w]hether a contract is ambiguous is a question of law for the trial court to determine,'" *P & S Business, Inc. v. S. Cent. Tel. Co.*, 466 So. 2d 928, 931 (Ala. 1985) (quoting *Haddox v. First Ala. Bank*

---

[8] The court notes that other courts analyzing similar policy provisions have reached the same conclusion. *See Am. Mut. Fire Ins. Co. v. Durrence*, 872 F.2d 378, 379 (11th Cir. 1989) ("[A] common sense interpretation of the insurance contract's 'Vandalism or Malicious Mischief' provision which contains the 'vacancy' exclusion, suggests that it would apply to a fire set in a vacant house by an unknown arsonist or vandal."); *Saffold v. Allstate Indem. Co.*, No. 2:08cv1023-MHT, 2009 WL 3326934, at *1 (M.D. Ala. Oct. 14, 2009) (finding in a case involving both a fire loss and an arguably similar exclusion that, "because the evidence shows that the policy excludes coverage for vandalism committed against a vacant dwelling, and because the renter had moved out more than ten months before the fire, there is no coverage"). However, the court is also aware that some courts have reached a different conclusion. *See Dixon v. Safeco Ins. Co. of Am.*, No. 27763-8-II, 2002 WL 31002848, at *2-3 (Wash. Ct. App. Sept. 6, 2002) ("Where a homeowner's insurance policy treats 'fire' and 'vandalism and malicious mischief' as two distinct causes of loss and the terms are not defined, an average person would conclude that arson falls under the category of fire rather than vandalism and malicious mischief. Thus, we hold that when a homeowner purchases a dwelling fire policy that contains a vacancy exclusion for vandalism and malicious mischief, arson is a covered peril.") (footnote omitted). Still, as stated above, this court finds the exclusion to be unambiguous.

*of Montgomery*, 449 So. 2d 1226, 1228 (Ala. 1984)), the court disagrees that additional discovery is warranted. Swanson's third argument is therefore unpersuasive.

4.  Facts Relating to Swanson's Bad Faith Claim and Allstate's Investigation

Regarding his fourth argument, Swanson notes that, for Allstate's basis in moving for summary judgment on his bad faith claim, "Allstate seeks to stand on the adequacy of its own investigation, a purely factual issue, without allowing [him] to depose a single witness regarding this investigation." (Doc. 39 at 23.) Swanson submits that discovery may "show[] that Allstate knew that it had no lawful basis for requiring that Swanson and his mortgagee present evidence that Swanson was no longer making mortgage payments," and also may reveal "proof that Allstate knew before it denied Swanson's claim that the vandalism and malicious mischief exclusion was ambiguous when applied to the facts of this case." (*Id.* at 23-24.) According to Swanson, should discovery, as he expects, reveal such evidence, then "Allstate would not be entitled to summary judgment on [his] bad faith claim." (*Id.* at 24.)

"Under Alabama law, there are two methods by which a party can establish a bad faith refusal to pay an insurance claim," "normal" bad faith, and "abnormal" bad faith. *Mut. Serv. Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1314 (11th Cir. 2004) (citing *Employees' Benefit Assoc. v. Grissett*, 732 So. 2d 968, 976 (Ala. 1998)). To establish that an insurance company committed "normal" bad faith, i.e. bad faith refusal to pay an insurance claim, the insured must prove: "(1) a breach of the insurance contract; (2) an intentional refusal to pay the

13

insured's claim; (3) the absence of any reasonably legitimate or arguable reason for that refusal; and (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason." *Id.* (citing *Grissett*, 732 So. 2d at 976). By contrast, for an insured to establish "abnormal" bad faith, i.e. bad faith failure to investigate an insurance claim, he or she "must show (1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim.'" *Id.* at 1315 (quoting *Simmons v. Congress Life Ins. Co.*, 791 So. 2d 371, 379 (Ala. 2000)); *see also State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 306-07 (Ala. 1999) (noting the instances in which Alabama courts have found "abnormal" bad faith).

Simply put, the court disagrees that additional discovery is necessary with respect to Swanson's bad faith claim. As aforementioned, *see supra* Part II.A.3, given the undisputed facts of the case, Allstate relied upon an unambiguous exclusion to deny coverage, (*see* Doc. 33 at Ex. K), which alone precludes "normal" bad faith, *see Henderson*, 368 F.3d at 1315 (affirming denial of "normal" bad faith claim because insurance company had arguable reason for denying claim).[9] And, as Allstate argues, Swanson has already obtained discovery that details the history of Allstate's investigation. (*See* Doc. 41 at 8.) A review of that discovery does not suggest a "fail[ure] to properly investigate [Swanson's] claim or to

---

[9] Additionally, Allstate's reliance on the advice of counsel, Sue Williamson, also provides an arguable reason for denying Swanson's claim. *See Davis v. Cotton States Mut. Ins. Co.*, 604 So. 2d 354, 359 (Ala. 1992) ("[R]eliance on the advice of informed counsel has often been sufficient in itself to establish good faith or to rebut a claim of bad faith.") (citations omitted).

14

subject the results of the investigation to a cognitive evaluation and review," *see Henderson*, 368 F.3d at 1315, but instead demonstrates a thorough investigation into an indeed suspicious claim, including the referral of the claim to the Special Investigation Unit, and an independent evaluation by counsel, Sue Williamson, (*see* Doc. 33 at Exs. C & J). As such, the court finds that Swanson has failed to persuade the court that additional discovery is warranted, or, specifically, that his need for the requested depositions outweighs the burden such discovery would place on Allstate. *See James*, 157 F.3d at 1280. For these reasons, Swanson's fourth argument is unavailing.

5.  Facts Relating to Plaintiff's Misrepresentation Claim

Lastly, Swanson points out that "Allstate placed $110,000 of dwelling coverage on [his] house despite a replacement cost of $83,222." (Doc. 39 at 26.) Swanson contends that, through the requested discovery, he expects to show that Allstate uses a software program to determine the minimum coverage available, yet knows that the program generates excessive coverage, yielding inflated premiums. (*Id.* at 24-25.) Swanson argues that these facts would preclude summary judgment on his claim for misrepresentation. (*Id.* at 26-27.)

To establish a claim for misrepresentation, Swanson must show "(1) that [Allstate] made a false representation, (2) that the misrepresentation involved a material fact, (3) that [he] relied on the misrepresentation, and (4) that the misrepresentation damaged [him]." *AmerUS Life Ins. Co. v. Smith*, 5 So. 3d 1200, 1207 (Ala. 2008).

Although Swanson contends that "the representation is contained in the [Policy's] renewal notice," (Doc. 39 at 25), the plain language of that document dictates otherwise. Particularly, the renewal notice specifies that "it is the [insured's] responsibility to ensure that each of the Limits of Liability shown on the Policy Declarations are appropriate," and further states that "[i]f [the insured] want[s] to increase or decrease any of the limits of liability shown on the Policy Declarations, [the insured] must contact [Allstate] to request such a change." (Doc. 33, Ex. A at 15.)  What's more, the renewal notice makes clear that "there is a possibility that [the insured's] current limits may provide coverage *in excess* of the actual replacement cost," and actually informs the insured that "[he or she] may want to call [his or her] Allstate representative to discuss the current value of [his or her] home and the possibility of lowering [his or her] limits."[10]  (*Id.* at 17 (emphasis added).)  In short, given the plain language of the renewal notice, which specifically contemplates the scenario that Swanson cites as the basis for his misrepresentation claim, the court finds that Swanson has failed to show how additional discovery on the issue would create a genuine issue of material fact precluding summary judgment.  As a result, the court finds Swanson's fifth argument in support of his Rule 56(f) Motion to be unpersuasive.

In sum, Swanson's Rule 56(f) Motion to Continue Summary Judgment Until After Taking of Allstate Depositions is due to be granted to the extent it requests continuing

---

[10] It is relevant to note, as Allstate points out, that Swanson "never contacted Allstate to question or dispute the replacement cost of the subject dwelling, limits of liability, or his policy premiums." (Doc. 41 at 12.)  Swanson has not disputed this assertion. (*See generally* Doc. 42.)

Allstate's Motion for Final Summary Judgment until after Swanson conducts discovery on the issue of whether Allstate mailed the Policy to Swanson, but, in all other respects, the Motion is due to be denied.

### B.   SWANSON'S MOTION TO COMPEL DEPOSITIONS AND THIRD MOTION TO COMPEL DOCUMENTS, (DOC. 31)

In his Motion to Compel Depositions and Third Motion to Compel Documents, Swanson requests that the court compel Allstate to make available for deposition: (1) Mike Rocchio, the claims adjuster assigned to Swanson's claim, (2) Michael Simpson, Rocchio's manager, (3) Sue Williamson, the coverage attorney who recommended denying Swanson's claim, and (4) a Rule 30(b)(6) witness. (Doc. 31 at 2, 6-7 & Ex. A.)  In addition, Swanson also asks the court to compel Allstate to answer Swanson's First Interrogatories, and to produce certain documents requested by his Second Request for Production, specifically Request for Production Numbers 20 through 25. (*Id.* at 6-7 & Ex. B.)

As stated above, *see supra* Part II.A, and as the court made clear during the August 24, 2010 hearing, with the exception of discovery on the issue of whether Allstate mailed the Policy to Swanson, Swanson has failed to adequately demonstrate a need for additional discovery.  Accordingly, Swanson's Motion to Compel Depositions is due to be granted to the extent it moves to compel the deposition of a Rule 30(b)(6) witness on the issue of whether Allstate mailed the Policy to Swanson, but is due to be denied as to the depositions of Mike Rocchio, Michael Simpson, and Sue Williamson.  Also, because neither his First

17

Interrogatories nor his Second Request for Production seek discovery on the issue of whether Allstate mailed the Policy to Swanson, (*see* Doc. 31 at Ex. B), Swanson's Third Motion to Compel Documents is likewise due to be denied.

**C.     ALLSTATE'S MOTION FOR PROTECTIVE ORDER, (DOC. 38)**

In its opposition to Swanson's Motion to Compel Depositions and Third Motion to Compel Documents, Allstate moved for the entry of a protective order. (*See* Doc. 38). Specifically, Allstate requests that the court enter an order "precluding the depositions of Mike Rocchio, Sue Williamson, Mike Simpson and the 30(b) representative of Allstate as well as Plaintiff's second discovery requests." (*Id.* at 1.)

As noted above, Swanson is entitled to discovery on the issue of whether Allstate mailed the Policy, and will therefore be allowed to depose a 30(b)(6) witness on this issue. For that reason, Allstate's Motion for Protective Order is due to be denied to the extent it seeks to preclude that deposition. However, because Swanson is not entitled to any other discovery absent the court's express permission, Allstate's Motion for Protective Order is due to be granted in all other respects.

**CONCLUSION**

For the foregoing reasons, the court is of the opinion that Swanson's Rule 56(f) Motion to Continue Summary Judgment Until After Taking of Allstate Depositions, (Doc.

18

39), is due to be granted in part and denied in part, and his Motion to Compel Depositions and Third Motion to Compel Documents, (Doc. 31), is due to be granted in part and denied in part.  Allstate's Motion for Protective Order, (Doc. 38), is due to be granted in part and denied in part.  An Order in conformity with this Memorandum Opinion will be entered contemporaneously.

**DONE**, this 3rd day of September, 2010.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE