## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| QUINTON SWANSON, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | CASE NO.  2:09-cv-2148-SLB |
| | } | |
| ALLSTATE INDEMNITY COMPANY, | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is currently before the court on defendant Allstate Indemnity Company's ("Allstate") Motion for Summary Judgment, (doc. 33),[1] and plaintiff Quinton Swanson's ("Swanson") Motion to Strike Exhibits of Allstate Insurance, (doc. 47), and Motion to Strike Affidavit of Michael Rocchio, (doc. 51).  Swanson has filed suit against Allstate, alleging breach of an insurance contract, bad faith, and misrepresentation.  (Doc. 25 at ¶¶ 10-29.)  Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court finds that Swanson's Motion to Strike Exhibits of Allstate Insurance is due to be denied, Swanson's Motion to Strike Affidavit of Michael Rocchio is due to be denied as moot, and Swanson's Motion for Summary Judgment is due to be granted.

---

[1] Reference to a document number, ("Doc. ___"), refers to the number assigned to each document as it is filed in the court's record.

# I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in its favor. *See id.* at 255. Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every *reasonable* inference." *Graham v. State*

*Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citing *Brown v. City of*

*Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)) (emphasis added).

## II. FACTUAL AND PROCEDURAL HISTORY[2]

Swanson purchased a Deluxe Homeowners Policy of insurance (the "Policy") from

Allstate, which covered a house owned by Swanson located at 2853 41st Court North,

Birmingham, Alabama (the "Property").  (Doc. 25 ¶¶ 4 & 5; doc. 33-1.)  To finance the

Property, Swanson executed a mortgage in favor of Washington Mutual Bank

("Washington Mutual").  (Doc. 48-2 at 2; doc. 48-1 at 4; doc. 48-3 at 2-3.)  On September

19, 2008, a fire destroyed the Property.  (Doc. 25 ¶ 7; doc. 33-2 & 33-3; doc. 48-1.)

Swanson's Policy was in effect at that time.  (Doc. 25 ¶ 6; docs. 33-1 & 33-3.)  Swanson

notified Allstate of the fire and submitted a claim for $88,314.00, which included

$83,222.00 for the loss of the structure and $5,092.00 for the loss of personal property

(i.e. the contents within the structure).  (Doc. 48-1.)  Swanson also demanded that Allstate

pay off Washington Mutual.  (*Id*.)  Swanson reported to Allstate that an unknown suspect

broke into his house and set it on fire.  (Doc. 33-3 at 5.)  Allstate immediately opened an

investigation.  (Doc. 25 ¶ 8; docs. 33-2 at 148; doc. 33-3.)  Allstate assigned contents

---

[2]As required when determining a motion for summary judgment, the court has
construed the facts in the light most favorable to Swanson, the non-movant.  All disputed
facts are ultimately resolved in Swanson's favor, and all reasonable inferences arising
from those facts are drawn in his favor.  *Lujan v. National Wildlife Federation*, 497 U.S.
871, 888-89 (1990); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455 (11th
Cir. 1997).

specialist, Jane Minton ("Minton"), and structure adjuster, Gregory Mims ("Mims"), to inspect the loss and begin the claims process.  (Doc. 33-3 at 4.)

Due to the suspicious circumstances surrounding the fire, Allstate requested a cause and origin investigation.  (*Id.* at 2-3.)  Allstate Adjuster Mike Rocchio ("Rocchio") was assigned to investigate Swanson's claim.  (*Id.*)  Almost immediately, Mr. Rocchio learned that the Birmingham Fire Department's investigation classified the fire as incendiary or intentionally set.  (*Id.*; doc. 33-4.)  Similarly, the Birmingham Police identified the fire at the Property as "Arson."  (Doc. 33-5.)  An independent investigation, conducted at Allstate's request by Certified Fire Investigator Doug Harper ("Harper"), also found that the fire was the result of an intentional act and involved two separate points of origin.  (Doc. 33-6.)  Swanson does not dispute the findings that the fire was intentionally set, (doc. 33-2 at 134), but he denies that it was set by him or someone at his direction.  (*Id.* at 68 & 172.)  Instead, Swanson thinks that someone broke into the Property and set the fire.  (*Id.* at 134.)

At the time of the fire, the Property had been vacant for over one year.  (Doc. 33-2 at 10.)  In fact, Swanson has admitted that the house was vacant.  (Doc. 33-7 at 3 & 8.)  Mr. Swanson also informed Rocchio that the power at the Property had been shut off for approximately one year before the fire, (*id.* at 6), and that the water and gas had been shut off for months before the fire.  (*Id.* at 7.)  The Policy contains several exclusions,

4

including an exclusion for certain acts of "Vandalism or Malicious Mischief" committed while the Property is vacant or unoccupied.  (Doc. 33-1 at 28-33.)

The Policy also includes an "Insuring Agreement" (the "Insuring Agreement"), which states that Swanson "must . . . inform . . . [Allstate] of any change in title, use or occupancy" of the Property.  (Doc. 33-1 at 26.)  Swanson never informed Allstate before the fire that the Property was vacant.  (Doc. 33-2 at 148.)  Rocchio obtained Swanson's recorded statement on September 25, 2008.  (*See* doc. 33-7.)  At that time, Swanson, a commercial truck driver, denied any involvement in the fire and stated that at the time of the fire, he was working and transporting a load to Duluth, Georgia.  (*Id.* at 5 & 11-12.)  Global Positioning System ("GPS") records for Swanson's truck show that his truck left the truck yard in Tarrant, Alabama at 3:08 a.m. on September 19, 2008.  (Doc. 33-8.)  The fire at 2853 41st Court North, Birmingham, Alabama was reported to 911 at 2:56 a.m. on September 19, 2008.  (Doc. 33-9.)

Due to the numerous questions concerning the circumstances of the fire, Allstate sought the assistance of Attorney Sue Williamson ("Attorney Williamson") to take an examination under oath of Swanson (the "EUO"). (*See* doc. 33-2 at 5.)  Following the EUO, Attorney Williamson reviewed and analyzed the facts underlying the claim in order to prepare a recommendation for Allstate on the issue of coverage under the Policy.  (*See* doc. 33-10.)  In a letter to Allstate dated April 16, 2009, Attorney Williamson recommended Swanson's claim be denied based upon the Policy's vandalism during

vacancy exclusion, material misrepresentations submitted to Allstate, and the defense of arson.  (*Id.*)  Citing, *inter alia*, the Policy's "Vandalism or Malicious Mischief" exclusion, and relying on the  advice of Attorney Williamson, on April 28, 2009, Allstate wrote a letter to Swanson denying coverage for his claim.  (Doc. 33-11.)  Allstate also refused to pay-off Washington Mutual unless Washington Mutual demonstrated to Allstate that Swanson was no longer making mortgage payments to Washington Mutual.  (Doc. 48-1; doc. 48-3 at 4.)  Since the fire, Swanson has continued to make his monthly mortgage payments of $436.60.00 to Washington Mutual, and Allstate has not paid off Washington Mutual.  (Doc. 48-1.)

In response to Allstate's denial of his claim, Swanson filed suit against Allstate in the Circuit Court for Jefferson County, Alabama, which Allstate later removed to federal court.  (Doc. 1 at 1.)  Subsequently, Swanson filed an Amended Complaint.  (Doc. 25.)  The Amended Complaint asserts three causes of action: Count I, breach of an insurance contract, Count II, bad faith, and Count III, misrepresentation.  (Doc. 25 at ¶¶ 10-24.)

Thereafter, Allstate filed a Motion for Final Summary Judgment, (doc. 33), which prompted Swanson to file a Rule 56(f) Motion to Continue Summary Judgment Until After Taking of Allstate Depositions.  (Doc. 39.)[3]  Allstate filed a Response to Plaintiff's Rule 56(f) Motion to Continue Summary Judgment Until After Taking of Allstate

---

[3] Swanson had earlier filed a separate Motion to Hold Summary Judgment in Abeyance Until After Taking of Allstate Depositions, (doc. 36), which, because of procedural deficiencies, the court denied, (*see* doc. 37).  However, the court's Order was entered without prejudice to Swanson's right to refile a Rule 56(f) motion.  (*Id.* at 3.)

Depositions.  (Doc. 41.)  Swanson filed a Reply to Defendant's Response to Plaintiff's

Rule 56(f) Motion to Continue Summary Judgment Until After Taking of Allstate

Depositions.  (Doc. 42.)  On September 3, 2010, the court issued both a Memorandum

Opinion, (doc. 43), and Order, (doc. 44), granting in part and denying in part Swanson's

Rule 56(f) Motion to Continue Summary Judgment Until After Taking of Allstate

Depositions.  Specifically, Swanson's motion was granted to the extent it asked the court

to continue Allstate's Motion for Final Summary Judgment until after Swanson deposed a

30(b)(5) & (6) witness on the issue of whether Allstate mailed the Policy to Swanson.

(Doc. 43 at 16-17.)  In all other respects, the motion was denied.  (*Id.*)  In accordance

with the Memorandum Opinion and Order, Allstate designated Linda Sisson as its

30(b)(5) & (6) representative and she was deposed on October 20, 2010.

After the Linda Sisson deposition, Allstate filed a Supplemental Brief in Support

of Motion for Final Summary Judgment.[4]  Swanson filed a Statement of Facts and

Memorandum of Law in Opposition to Allstate's Motion for Summary Judgment. (Doc.

48.)  Swanson also filed a Motion to Strike Exhibits of Allstate Insurance, (doc. 47),

which seeks to strike for lack of authentication certain exhibits filed by Allstate in support

---

[4] Allstate's Supplemental Brief, (doc. 46), relates solely to the issue of whether Allstate
mailed the Policy to Swanson.  Swanson does not address that issue in his Statement of Facts and
Memorandum of Law in Opposition to Allstate's Motion for Summary Judgment, (doc. 48).
Therefore, Swanson has abandoned any claim based on Allstate's failure to mail him the Policy.
*See*, *e.g.*, *Davis v. NPC Pizza Hut*, 447 F.Supp.2d 1260, 1263 (N.D. Ala. 2006)(finding plaintiff
abandoned claim when claim not briefed and argued in opposition to motion for summary
judgment); *Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1322 (11th Cir. 2001)(finding claim
abandoned when argument not presented in initial response to motion for summary judgment).

of its Motion for Summary Judgment.  (*Id.*)  In response to the Motion to Strike, Allstate

filed a Notice of Filing of Supplemental Evidentiary Submissions.  (Doc. 49.)  Allstate's

sole supplemental evidentiary submission was the Affidavit of Michael Rocchio.  (*See*

doc. 49-1.)  The Affidavit of Michael Rocchio relates only to the authenticity of the

exhibits Allstate previously filed in support of its Motion for Summary Judgment.  (*Id.*)

Allstate filed a Reply to Plaintiff's Statement of Facts and Memorandum of Law in

Opposition to Allstate's Motion for Summary Judgment.  (Doc. 50.)  Swanson responded

to Allstate's Notice of Filing of Supplemental Evidentiary Submission by filing a Motion

to Strike the Affidavit of Michael Rocchio.  (Doc. 51.)  Allstate filed a Reply to

Plaintiff's Motion to Strike the Affidavit of Michael Rocchio.  (Doc. 53.)  The matter was

thereafter deemed under submission.

### III. DISCUSSION

**A. MOTION TO STRIKE EXHIBITS OF ALLSTATE, (Doc. 47)**

Swanson's Motion to Strike Exhibits of Allstate Insurance, (doc. 47), asks the

court to "strike Allstate's Exhibits B, C, D, E, F, G, I, J, and K,[1] filed in support of

---

[1] Exhibit B, (doc. 33-2), is the Sworn Statement of Swanson.  Exhibit C, (doc. 33-3), is Allstate's
Claim History Report.  Exhibit D, (doc. 33-4), is the Birmingham Fire and Rescue Service Fire
Investigations Bureau Preliminary Report. Exhibit E, (doc. 33-5), is the Birmingham Police
Incident/Offense Report.  Exhibit F, (doc. 33-6), is the Report of Certified Fire Investigator Doug
Harper that was prepared for Allstate.  Exhibit G, (doc. 33-7), is a transcript of the recorded
statement of Swanson.  Exhibit I, (doc. 33-9), is the Birmingham Fire and Rescue Services'
Incident Report. Exhibit J, (doc. 33-10), is the Attorney's Claim Summary and Legal Coverage
Analysis and Recommendation prepared for Allstate by Sue Williamson.  Exhibit K, (doc. 33-
11), is the letter from Allstate to Swanson denying coverage under the Policy.

Allstate's Motion for Summary Judgment." (Doc. 47.)   In conclusory fashion, Swanson contends that Exhibits B, C, D, E, F, G, I, J, and K "are unsworn and unauthenticated" and that "[d]ocuments submitted in support of a motion for summary judgment must be properly authenticated by an affidavit or deposition." (*Id.* at 1.)  In response, Allstate contends that Swanson's Motion to Strike Exhibits of Allstate Insurance is due to be denied because "the documents submitted by Allstate in support of its Motion for Summary Judgment can be reduced to an admissible and authenticated form at trial." (Doc. 53 at 3.)  The court agrees with Allstate.

Although Swanson correctly states, as a general rule, that "[a]ll exhibits must be authenticated before they may be considered at the summary judgment stage," *see*, *e.g.*, *Evans v. Pemco Aeroplex, Inc.*, 1998 WL 1048470, *13 (N.D. Ala. Feb. 23, 1998) (citations omitted), the Supreme Court has held the nonmoving party is not required to "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The United States Court of Appeals for the Eleventh Circuit has "read this statement as simply allowing ***otherwise admissible*** evidence to be submitted in ***inadmissible* form** at the summary judgment stage, though at trial it must be submitted in admissible form." *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) (citing *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1017 (11th Cir. 1987)); *see also*, *e.g.*, *United States v. Jones*, 29 F.3d 1549, 1554

(11th Cir. 1994) ("Summary judgment may be based on any evidence which would be admissible at trial.").

> The general rule in this Circuit is that parties' exhibits may be considered for purposes of pretrial rulings so long as they can be reduced to admissible form at trial.  *See, e.g., Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005)("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form."); *U.S. Aviation Underwriters, Inc. v. Yellow Freight System, Inc.*, 296 F. Supp. 2d 1322, 1327 n.2 (S.D. Ala. 2003)(documents need not be properly authenticated to be considered at summary judgment where it is apparent that they can be reduced to admissible, authenticated form at trial).

*Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1223 (S.D. Ala. 2008); *see also*, *e.g.*, Memorandum Opinion and Order, doc. 76, *Leeth v. Athens/Limestone Hospital, Inc.*, No. 5:07-cv-0956-SLB (N.D. Ala. filed May. 23, 2007); *Bozeman v. Orum*, 199 F. Supp. 2d 1216, 1222 (M.D. Ala. 2002) ("Generally, documents must be properly authenticated in order for them to be considered on summary judgment.  However, it makes sense that unauthenticated documents may be considered when no objection is made or when it is apparent that those documents can be reduced to admissible, authenticated form at trial.") (internal citation omitted)

The court finds that Allstate's Exhibits B, C, D, E, F, G, I, J, and K can be sufficiently authenticated at trial.  Indeed, Swanson's Motion to Strike does not offer any grounds as to why Allstate's Exhibits might not be authentic or point to any specific circumstances in the present case that might indicate a lack of trustworthiness.  *See Gaddy v. Hartford Life Ins. Co.*, 218 F. Supp. 2d 1123, 1126 (E.D. Mo. 2002) (overruling

a conclusory objection and finding an unauthenticated police accident investigation report competent summary judgment evidence based on the public records exception to the hearsay rule and sufficient indicia of authenticity).  In light of the conclusory nature of Swanson's Motion to Strike, the court's finding that these exhibits can be reduced to an admissible form at trial, and the strong preference for the resolution of disputes on the merits, *cf. Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.*, 740 F.2d 1499, 1510 (11th Cir. 1984) (recognizing "the strong policy of determining cases on their merits"), Swanson's Motion to Strike Exhibits of Allstate Insurance, (doc. 47), is due to be denied.

The court also notes that while Swanson, in his Statement of Facts and Memorandum of Law in Opposition to Allstate's Motion for Summary Judgment, (doc. 48), contends that "Allstate relies on unsworn, unauthenticated documents *containing hearsay*" and that "[t]hese documents provide no support for Allstate's contentions and are due to be stricken," (*id.* at 1-4 (emphasis added)), Swanson's Motion to Strike does not contain a single reference to the word "hearsay."  (*See* doc. 47.)  The Federal Rules require that any "application to the court for an order shall be by motion which ... shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought."  Fed. R. Civ. P. 7(b).  Where an evidentiary objection is simply imbedded within an opposition memorandum, the issue has not been raised properly.  *See Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1222 (11th Cir. 1999) (citation omitted).

11

Because Swanson did not properly raise the hearsay objection, the court finds that such objection is waived.  *See Offshore Aviation v. Transcon Lines, Inc.,* 831 F.2d 1013, 1016 (11th Cir. 1987) (citing *Munoz v. Int'l Alliance of Theatrical Stage Employees, Etc.*, 563 F.2d 952, 955 n.2 (11th Cir. 1985)) ("[I]f evidence otherwise inadmissible provoked no timely objection, it could and, if material, should be factored into a summary judgment decision."); *Enplanar, Inc. v. Marsh,* 11 F.3d 1284, 1297 n. 17 (5th Cir. 1994) ("The Contractors now contend that this paper is hearsay, and cannot be relied on by the district court in rendering summary judgment. However, they did not raise this hearsay objection below, so the error, if any, is waived.") (citations omitted).

In any event, the court is of the opinion that Allstate's Exhibits are competent summary judgment evidence,[2] *cf. GuideOne Mut. Ins. Co. v. Rock*, 2009 WL 1854452, *5 (N.D. Miss. June 29, 2009)(considering an examination under oath as proper summary judgment evidence), evidence admissible under Fed. R. Evid. 803(8)(C), *see, e.g.*, *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 170 (1988) ("[P]ortions of investigatory reports otherwise admissible under Fed. R. Evid. 803(8)(C) are not inadmissible merely because

---

[2]  Swanson moved to strike Allstate's Exhibit C, (doc. 33-3), which is Allstate's Claim History Report.  (*See* doc. 47 at 1.)  Swanson, however, submitted a different portion of the same Claim History Report in support of his Statement of Facts and Memorandum of Law in Opposition to Allstate's Motion for Summary Judgment, (doc. 48). (*See* doc. 48-3.)  The law is well-established that "one waives his right to object to the admission of evidence if he later introduces evidence of the same or similar import himself.  *A fortiori* one may not be heard to complain about the admission of evidence where, as here, he introduced that very evidence himself."  *United States v. Truitt*, 440 F.2d 1070, 1071 (5th Cir. 1971) (citing, *inter alia*, *Mercer v. Theriot*, 377 U.S. 152, 84 S. Ct. 1157, 12 L. Ed. 2d 206 (1964); *Grogan v. United States*, 394 F.2d 287 (5th Cir. 1967), *cert. denied*, 393 U.S. 830, 89 S. Ct. 97, 21 L. Ed. 2d 100 (1968)).

12

they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report."), evidence admissible under Fed. R. Evid. 803(6), *see*, *e.g.*, *Weber v. Hartford Life and Acc. Ins. Co.*, 2008 WL 3932014, *3 (D. Ariz. Aug. 25, 2008) (holding that police and medical examiners' reports, as well as a denial of claim letter were part of an insurer's claim and were thus admissible as business records under Fed. R. Evid. 803(6)), or admissible non-hearsay evidence, *see*, *e.g.*, *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 530 (5th Cir. 1992) (finding out-of-court statements were offered to prove reliance, not for their truth, and therefore should have been considered by the district court in ruling on a motion for summary judgment).  Accordingly, Swanson's Motion to Strike Exhibits of Allstate Insurance, (doc. 47), is due to be denied.

## B. MOTION TO STRIKE AFFIDAVIT OF MICHAEL ROCCHIO, (Doc. 51)

Swanson's Motion to Strike Affidavit of Michael Rocchio contends that "Swanson has never been allowed to take the deposition of ... Michael Rocchio" and  "[t]o allow the use of his affidavit in support of Allstate's motion for summary judgment, without allowing Swanson to depose him[,] would constitute reversible error."  (Doc. 51 at 2.) Because Swanson's Motion to Strike Exhibits of Allstate Insurance, (doc. 47), as discussed *supra*, is due to be denied, the court declines to consider the Affidavit of Michael Rocchio, (doc. 49-1).  As a result, Swanson's Motion to Strike Affidavit of Michael Rocchio, (doc. 51), is due to be denied as moot.

13

**C. MOTION FOR SUMMARY JUDGMENT, (Doc. 33)**

Swanson's Amended Complaint, (doc. 25), asserts causes of action for breach of contract, bad faith, and misrepresentation.  (*Id.*)  Allstate contends that "[e]ach of these claims fail as a matter of law."  (Doc. 33 at 6.)  As set forth above, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See Celotex Corp.*, 477 U.S. at 322.

**1. Breach of Contract**

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages."  *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105-06 (Ala. 2002) (citing *State Farm Fire & Cas. Co. v. Slade,* 747 So. 2d 293, 303 (Ala. 1999)).  In *Altiere v. Blue Cross and Blue Shield of Alabama*, 551 So. 2d 290 (Ala.1989), the Alabama Supreme Court explained that:

> Courts are not at liberty to rewrite policies to provide coverage not intended by the parties. *Newman v. St. Paul Fire & Marine Insurance Co.,* 456 So. 2d 40 (Ala.1984). In the absence of a statutory provision to the contrary, insurance companies have the right to limit their liability and to write policies with narrow coverage. *United States Fidelity & Guaranty Co. v. Bonitz Insulation Co.,* 424 So. 2d 569 (Ala.1982). Ambiguities in an insurance policy must be construed liberally in favor of the insured, and exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. *Cotton States Mutual Ins. Co. v. Michalic,* 443 So. 2d 927 (Ala.1983), overruled on other grounds, *Holt v.*

> *State Farm Mutual Automobile Ins. Co.,* 507 So. 2d 388 (Ala.1986);
> however, if there is no ambiguity, courts must enforce insurance contracts
> as written and cannot defeat express provisions in a policy, including
> exclusions from coverage, by making a new contract for the parties. *Turner
> v. United States Fidelity & Guaranty Co.,* 440 So. 2d 1026 (Ala.1983).

*Id.* at 292.  "[T]he insurer bears the burden of proving the applicability of any policy

exclusion.  *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001) (citing *Fleming v.*

*Alabama Farm Bureau Mut. Cas. Ins. Co.*, 310 So. 2d 200, 202 (Ala. 1975)).

Under Alabama law, the terms of an insurance policy are ambiguous "only if the

policy's provisions are reasonably susceptible to two or more constructions or there is

reasonable doubt or confusion as to their meaning."  *Slade*, 747 So. 2d at 308-09 (citation

omitted).  In making this determination, a court ascribes to the words the meaning that "a

reasonably prudent person applying for insurance would have understood them to mean"

and considers the language of the "policy as a whole."  *Id.*  (citations omitted).  "Whether

a contract is ambiguous is a question of law for the trial court to determine." *P & S*

*Business, Inc. v. S. Cent. Tel. Co.*, 466 So. 2d 928, 931 (Ala. 1985) (quoting *Haddox v.*

*First Ala. Bank of Montgomery*, 449 So. 2d 1226, 1228 (Ala. 1984)).

Allstate contends that it is has carried its burden and is entitled to summary

judgment on Swanson's cause of action alleging breach of contract. Allstate maintains

that it has presented substantial evidence that the loss in question was specifically

excluded in the Policy as it resulted from vandalism while the Property was vacant or

unoccupied.  (Doc. 33 at 9-15.)  In response, Swanson argues that Allstate has failed to

15

meet its burden of proving the vacancy exclusion because the exclusion is ambiguous.[3]

(Doc. 48 at 11-16.)  Swanson contends that the Policy's Vandalism or Malicious Mischief

exclusion is ambiguous because "[t]he loss in this case, undoubtedly a fire, reasonably

falls under both the fire peril and the vandalism and malicious mischief peril" and also

because "[t]he language reasonably suggests that the vacancy exclusion does not apply to

losses caused by fire or lightning."[4]  (Doc. 48 at 13.)  Swanson points out that Allstate's

own employee, Michael Simpson, recognized that the exclusion may be ambiguous under

Alabama law, but that Allstate failed to address the issue prior to denying his claim.  (*Id.*

at 14.)

Swanson submitted a claim for $88,314.00, which included $83,222.00 for the loss

of the Property (the structure itself) and $5,092.00 for the loss of personal property within

his home.  (Doc. 48-1.)  Although the parties have not done so, the court draws a

---

[3] Swanson contends that "Allstate has not pleaded the vacancy or any other exclusion in its answer."  (Doc. 48 at n.3.)  Therefore, he argues, "Allstate is precluded from raising it on summary judgment." (*Id.*)  Although Swanson correctly states as a general rule that affirmative defenses not pled in an answer are deemed waived and cannot be raised on summary judgment, *see Morgan Guar. Trust Co. of New York v. Blum*, 649 F.2d 342, 344-45 (5th Cir. 1981), in its Answer, (doc. 3), as its Fourth Defense, Allstate pled: "This Defendant pleads the applicable terms and conditions of the policy in question."  (*Id.* at 1.)  Moreover, in its Answer to Amended Complaint, (doc. 35), as its First Defense, Allstate pled: "This Defendant affirmatively pleads the terms and conditions of the policy in question."  (*Id.* at 4.)  Accordingly, Swanson's contention that "Allstate has not pleaded the vacancy or any other exclusion in its answer" is without merit.

[4] "The fact that during litigation parties adopt conflicting interpretations of language in a contract does not create an ambiguity that will preclude a summary judgment where, in fact, no ambiguity exists."  *Bank of Brewton, Inc. v. Int'l Fidelity Ins. Co.*, 827 So. 2d 747, 753 (Ala. 2002) (citing *Griffin Elec., Inc. v. Dunn Constr. Co.*, 622 So. 2d 314 (Ala. 1993)).

16

distinction between the Policy's language relating to personal property and the Policy's language relating to the Property itself.

As to the Property itself, the Policy provides:

> [**W**]e do not cover loss consisting of or
> caused by any of the following:
> . . . .
>
> 20.    Vandalism or Malicious Mischief if **your dwelling**
>        is vacant or unoccupied for more than 30
>        consecutive days immediately prior to the
>        vandalism or malicious mischief.  A **dwelling**
>        under construction is not considered vacant or
>        unoccupied.

(Doc. 33-1 at 30.)

In the Memorandum Opinion granting in part and denying in part Swanson's Rule 56(f) Motion, the court considered the language of the Policy relating to the Property as set forth in Coverages A and B.  As the court stated in that Memorandum Opinion, "the Policy's Vandalism or Malicious Mischief exclusion is *not ambiguous*."  (Doc. 43 at 12 (emphasis added).)  More specifically, the court finds that the Policy expressly excludes coverage for a loss to the Property under Coverages A and B sustained due to vandalism or malicious mischief when the insured dwelling is vacant or unoccupied.  The court also finds that, under Alabama law, arson or an intentionally set fire unambiguously constitutes "vandalism" or "malicious mischief" within the meaning Coverages A and B. Other courts analyzing similar policy provisions have reached the same conclusion.  *See*,

17

*e.g., Am. Mut. Fire Ins. Co. v. Durrence*, 872 F.2d 378, 379 (11th Cir. 1989); *cf. Saffold v. Allstate Indem. Co.*, 2009 WL 3326934, at *1 (M.D. Ala. Oct. 14, 2009).

Although it appears there is no clearly controlling case or statute under Alabama law, in *Durrence*, the Eleventh Circuit, applying Georgia law, held that a policy's "vandalism or malicious mischief" provision excluded coverage for arson when the resident premises had been vacant for more than thirty days. 872 F.2d at 379. The court stated that "a common sense interpretation of the insurance contract's 'vandalism or malicious mischief' provision . . . suggests that it would apply to a fire set in a vacant house by an unknown arsonist or vandal." *Id.* at 379.

*Estes v. St. Paul Fire and Marine Ins. Co.*, 45 F. Supp. 2d 1227 (D. Kan. 1999)*,* is also instructive. In *Estes*, the court considered a policy stating that it "covers your home for vandalism and glass breakage as long as you haven't left it vacant for more than thirty days or more." *Id.* at 1229. Having found that there was no ambiguity in the disputed policy terms, the court found that the policy exclusion included arson. *Id.* Specifically, the court stated:

> [T]he Court finds that in referring to "vandalism," the policy exclusion includes arson. Plaintiff argues that "vandalism" does not include arson because the crime of arson requires the additional element of burning. Plaintiff has cited no authority for excluding the burning of property from the definition of vandalism. Vandalism is commonly defined as "the willful or malicious destruction or defacement of things of beauty or of public or private property." Webster's Third New Int'l Dictionary (1986) at 2532. On the other hand, arson is defined as "the willful malicious burning of or attempt to burn any building, structure or property of another (as a house, a church, or a boat) or of one's own [use] . . . . with criminal or fraudulent

18

intent." *Id.* at 1229. Arson of a private dwelling clearly is within the plain and ordinary meaning of vandalism. *See Potomac Ins. Co. v. NCUA,*1996 WL 396100, at *4 (N.D. Ill. July 12, 1996) (ordinary meaning of "vandalism" includes arson); *American Mut. Fire Ins. Co. v. Durrence,* 872 F.2d 378, 379 (11th Cir.1989) (common sense definition of "vandalism or malicious mischief" includes a fire set by an unknown arsonist or vandal); *Brinker v. Guiffrida,* 629 F.Supp. 130, 135 (E.D. Pa.1985) (arson is a type of vandalism). Here, the parties agree that plaintiff's loss was caused by a fire that "was intentionally set by an unknown arsonist and/or vandal." Thus, the vandalism exclusion applies.

*Id.*

　　*Potomac Ins. Co. of Illinois v. NCUA a/k/a National Credit Union Assoc.,* 1996 WL 396100 (N.D. Ill. 1996), is similarly instructive.  In *Potomac,* the defendant issued an "all-risk" policy to its insured.  Shortly after the policy went into effect, the insured property became unoccupied.  Approximately four months later, the property was set on fire by an unknown arsonist.  *Id.* at *1.  The insured, Potomac, denied coverage under a provision that read: "If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage we will: . . . Not pay for any loss or damage caused by: . . . vandalism . . . ." *Id.* at *4.  Because the building had been vacant for more than sixty days prior to the fire, and because the fire was intentionally set by unknown persons, Potomac argued that arson constituted vandalism and that coverage was excluded. *Id.*  The *Potomac* court compared the dictionary definitions of "arson" and "vandalism" and concluded that arson is a type of vandalism.  The court reasoned:

　　Since "vandalism" is not defined in the policy, we must afford the term its plain, ordinary, and popular meaning. *Outboard Marine Corp.,* 180 Ill.Dec. 691, 607 N.E.2d at 1215-16. Illinois courts often look to Webster's

19

International Dictionary for guidance when divining the "usual and ordinary" meaning of contract language, *see id.,* and this source defines "vandalism" as the "willful or malicious destruction or defacement of things of beauty or of public or private property." Webster's Third New International Dictionary 2532 (1986); *accord* The American Heritage Dictionary of the English Language 1973 (3d ed.1992). Similarly, "arson" is defined by Webster's as "the willful and malicious burning of or attempt to burn any building, structure, or property of another (as a house, a church, or a boat) or of one's own [usually] with criminal or fraudulent intent." Webster's Third New International Dictionary 122 (1986); *accord* The American Heritage Dictionary of the English Language 103 (3d ed.1992).

Considering these sources and the ordinary meaning of the terms, it is apparent that arson-the willful or malicious destruction of public or private property through the setting of a fire-is a type of vandalism. Although NCUA argues that the ordinary person would not equate serious acts of arson with petty instances of vandalism, we find the conclusion NCUA draws from this assertion-that arson does not constitute a species of vandalism-untenable. Rather, given the definitions quoted above and the ordinary meanings of the two terms, we must conclude that arson does indeed fall within the definition of vandalism. We are mindful of our obligation to construe policy limitations narrowly. Yet this principle of construction does not permit us to unreasonably interpret a limitation provision out of an insurance contract, but only to give insureds the benefit of an ambiguous term. The language of the Policy in this case is not ambiguous: the willful destruction of property is not covered if the building has been vacant for sixty consecutive days. Under the facts stipulated for purposes of this motion, Gonsch's building was vacant for more than sixty days prior to the fire, and the fire was intentionally set by persons unknown. Thus, under this set of facts, the vacancy provision in the Policy plainly and unambiguously eliminates coverage. Because the Policy's clear and unambiguous terms must be applied as written, *Hurst-Rosche Engineers, Inc. v. Commercial Union Ins. Co.,* 51 F.3d 1336, 1342 (7th Cir.1995), we must conclude that Potomac has no coverage obligations for damage caused by arson at the insured premises.

*Id.*

After reviewing *Durrence* and the other cases cited *supra*, and carefully considering the language of the Policy, still, as stated above, the court finds the exclusion for Coverages A and B to be unambiguous.  Applying the unambiguous exclusion in Coverages A and B to the undisputed facts of this case makes clear that Allstate is entitled to summary judgment on Swanson's claim alleging breach of contract based on Allstate's denial of his claim for losses to the Property itself.  It is undisputed that the fire was intentionally set.  The Birmingham Police Incident/Offense Report specifies that the offense to the Property was "Arson."  (Doc. 33-5.)  Similarly, both the Birmingham Fire and Rescue Service Fire Investigations Bureau and Harper classified the fire that occurred at the Property as "incendiary."  (Docs. 33-4 & 33-6.)  Swanson does not dispute these findings.  (*See* doc. 33-2 at 134.)  It is also undisputed that the Property had been "vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief." (Doc. 33-1 at 26; *see* doc. 33-2 at 10; doc. 33-7 at 3 & 8.)*; see Durrence,* 872 F.2d at 379 (finding an insured's house excluded from coverage under the vacancy clause of a homeowner's policy because the house "lacked amenities minimally necessary for human habitation").   Because the fire was intentionally set, and because the court finds that such an act constitutes "vandalism" or "malicious mischief" to the Property, which, as Swanson acknowledges, had been "vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief,"

Allstate's Motion for Summary Judgment on Swanson's breach of contract claim is due to be granted to the extent Swanson seeks to recover for the loss to the Property itself.

As to Swanson's claim for the loss of personal property, the Policy provides:

> **Losses We Cover Under Coverage C:**
> **We** will cover sudden and **accidental** direct physical loss to the property described in **Coverage C - Personal Property Protection**, **except as limited or excluded in this policy**, caused by:
>
> 1.       Fire or Lightning.
>
> . . . .
>
> 8.       Vandalism or Malicious Mischief.
>
>> **We** do not cover vandalism or malicious mischief if your dwelling has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief.  A **dwelling** under construction is not considered vacant or unoccupied.

(Doc. 33-1 at 32-33 [emphasis added].)

    After reviewing the language of the Policy, the court finds that Coverage C is unambiguous and that Swanson's personal property claim falls under Coverage C's "Vandalism or Malicious Mischief" peril, for which there is an applicable vacancy exclusion in the Policy.  More specifically, the court finds that the Policy expressly excludes coverage for a loss to personal property under Coverage C sustained by fire resulting from vandalism when the insured dwelling is vacant or unoccupied.

22

First, Coverage C only provides coverage for "sudden and ***accidental*** direct physical loss . . . ." (*Id.* at 32 [emphasis added]. )  The "Fire or Lightning" peril thus only applies to accidental "Fire or Lightning[.]" (*Id)* The fact that "fire," which can be intentional or accidental, is grouped with "lightning," which is only accidental in nature, supports the conclusion that the "Fire" peril only covers losses sustained as a result of accidental fire. (*Id.*) The fire in this case was intentionally set, ***not*** accidentally set.  (Doc. 33-5; docs. 33-4 & 33-6.)  Swanson does not dispute that the fire was intentionally set. (*See* doc. 33-2 at 134.)  As a result, the "Fire and Lightning" peril, which only applies to "accidental" losses, does not apply in this case.  (Doc. 33-1 at 32.)

Second, Coverage C provides "Fire and Lightning" coverage "except as limited or excluded in this policy."  (*Id.*)  One such exclusion or limitation in Coverage C applies when "fire" constitutes "vandalism or malicious  mischief" and occurs when "dwelling has been vacant or unoccupied for more than 30 consecutive days."  (*Id.* at 33.)  The court finds that, under Alabama law, arson or an intentionally set fire unambiguously constitutes "vandalism" or "malicious mischief" within the meaning of Coverage C.  Swanson does not dispute that the fire was set by someone, he merely denies that it was set by him.  It is also undisputed that the house had been vacant for more than 30 consecutive days at the time of the fire.   As a result, Swanson's claim for personal property falls under Coverage C's "Vandalism or Malicious Mischief"  vacancy exclusion.

23

Even assuming that the Policy is ambiguous as to Coverages A and B or Coverage C, Allstate contends that it is entitled to summary judgment on the breach of contract claim because Swanson failed to comply with a condition precedent to recovery contained in the Policy.  (Doc. 33 at 15-22.)

According to the Alabama Supreme Court:

A condition precedent is a fact (other than the lapse of time) that, unless excused, must exist or occur before a duty of immediate performance of a promise arises.  A condition precedent may relate either to the formation of a contract or to liability under it. Whether a provision in a contract is a condition precedent depends, not upon formal words, but upon the intent of the parties, to be deduced from the instrument as a whole.

*Gamble v. Corley, Moncus & Ward, P.C.*, 723 So. 2d 627, 631 (Ala. 1998) (citing *Fidelity & Casualty Co. of New York v. DeLoach,* 195 So. 2d 789 (Ala. 1967)).  The Alabama Supreme Court has recognized that in order to recover on a breach of contract claim, an insured is required first to comply with strict conditions precedent to the contract.  *See Nationwide Ins. Co. v. Nilsen*, 745 So. 2d 264, 269 (Ala. 1998) ("Because it is undisputed that Nationwide requested that Nilsen submit to an examination under oath and that Nilsen failed to do so before filing this action, we must conclude that Nilsen failed to comply with a condition precedent to recovery under the contract.") (footnote omitted); *Hilley v. Allstate Ins. Co.,* 562 So. 2d 184, 189-90 (Ala.1990) (upholding a summary judgment in favor of the insurer when there was no evidence that the insured had satisfied the condition precedent of submitting receipts for additional living expenses).  Allstate contends that "[b]ecause Plaintiff failed to notify Allstate that the insured house was vacant[,] Plaintiff

24

did not comply with a clear condition precedent" contained in the Insuring Agreement.

(Doc. 33 at 19-22.).

> The Insuring Agreement provides:
>
> In reliance on the information **you** have given **us**, **Allstate** agrees to provide the coverages indicated on the Policy Declarations.  In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform us of any change in title, use or occupancy of the **residence premises**.

(Doc. 33-1 at 26.)  Swanson argues that the Insuring Agreement does not require Swanson

to report if the house is vacant or unoccupied.  (Doc. 48 at 16).  As support, Swanson

points to the fact that the Policy states that "[t]he residence premises may be vacant or

unoccupied for any length of time, except where a time limit is indicated in this policy for

specific perils."  (Doc. 33-1 at 40.)  However, that the Policy states that "[t]he residence

premises may be vacant . . ." says nothing about Swanson's duty to notify Allstate of such

vacancy as is required by the Insuring Agreement.  The "Conditions" section of the Policy,

in a provision titled "Suit Against Us[,]" expressly states: "No suit or action may be

brought against us unless there has been full compliance with all policy terms . . . ."  (Doc.

33-1 at 21 & 41 (emphasis omitted)); *cf. United States Fire Ins. Co. v. Watts*, 370 F.2d

405, 410 (11th Cir. 1966) ("The Alabama law appears to be settled that if a . . . policy

expressly makes the insured's compliance with all terms of the policy a condition

precedent to any action against the company, no recovery can be had where compliance is

absent.") (citation and footnote omitted).   Just as the Insuring Agreement unambiguously

25

requires Swanson to "pay the premium when due" as a condition precedent to liability
under the Policy, the Insuring Agreement unambiguously required Swanson to inform
Allstate "of any change in title, use or occupancy"of the Property as a condition precedent
to liability under the Policy.  Thus, consistent with the Policy's "Suit Against Us" clause,
in order to recover on his breach of contract claim, Swanson was required to first comply
with the Policy provision requiring that he inform Allstate "of any change in title, use or
occupancy" of the Property.  *Cf. Bell v. Allstate Ins. Co.*, 2005 WL 1353527, *4 (E.D. Pa.
May 31, 2005) (holding that an insurance policy provision stating "'*you* must pay the
premium due and comply with the policy terms and conditions, and inform *us* of any
change in title, use or occupancy of the *residence premises*' . . . clearly and unambiguously
support[ed] Defendant's argument that Plaintiff's Loss was not covered by the Policy"
because plaintiff did not notify the Defendant that the house was vacant); *see also Estate
of Luster v. Allstate Ins. Co.*, 598 F.3d 903, 907 (7th Cir. 2010) (interpreting an insurance
policy provision stating "'you must . . . inform . . . [Allstate] of any change in title, use or
occupancy of the residence premises'" as entitling "Allstate to cancel the policy in the
event the house became unoccupied").

Because it is undisputed that Swanson failed to inform Allstate before the fire of
the vacancy at the Property, the court concludes that Swanson failed to comply with a
condition precedent to coverage under the Policy.  Allstate cannot be liable for a failure to
perform when its duty to perform was excused by the nonoccurrence of a condition

precedent.  Therefore, Allstate's Motion for Summary Judgment on Swanson's breach of

contract claim would nonetheless be due to be granted even assuming the Policy was

ambiguous.

Notwithstanding his individual claim, Swanson contends that "Allstate's Motion for

Summary Judgment should be denied because Allstate has failed to address in its motion,

or offer substantial evidence negating Swanson's breach of contract and bad faith claim as

it relates to Allstate's failure to pay-off the holder of Mr. Swanson's mortgage[,]"

Washington Mutual.  (Doc. 48 at 6.)  Swanson argues that Allstate's duty to pay

Washington Mutual "is unrelated to the denial of Mr. Swanson's individual claim," yet,

"without any apparent basis in the contract, Allstate required the insured and mortgagee to

demonstrate that the insured is no longer making payments on the mortgage."  (*Id.* at 7-8.)

According to Swanson, "[n]o language in the policy imposes these requirements."  (*Id.* at

8.)

The Policy, in pertinent part, provides:

18.   **Mortgagee**
       A covered loss will be payable to the mortgagees
       named on the Policy Declarations, to the extent
       of their interest and in order of precedence.
       All provisions of **Section I** of this policy apply to
       these mortgagees.

       **We** will:
       a)    protect the mortgagee's interest in a
             covered **building structure** in the event of
             an increase in hazard, intentional or criminal
             acts of, or directed by, an **insured person**,

27

failure by any **insured person** to take all
reasonable steps to save and preserve property
after a loss, a change in ownership,
or foreclosure if the mortgagee has no
knowledge of these conditions; and

b)    give the mortgagee at least 10 days notice if
**we** cancel this policy.

The mortgagee will:
a)    furnish proof of loss within 60 days after
notice of the loss if an **insured person** fails
to do so;

b)    pay upon demand any premium due if
an **insured person** fails to do so;

c)    notify **us** in writing of any change of
ownership or occupancy or any increase in
hazard of which the mortgagee has knowledge;

d)    give **us** the mortgagee's right of recovery
against any party liable for loss; and

e)    after a loss, and at **our** option, permit **us** to
satisfy the mortgage requirements and
receive full transfer of the mortgage.

(Doc. 33-1 at 41-42.)

As the court stated in its Memorandum Opinion dated September 3, 2010:

To be sure, the court agrees that the Policy's standard mortgage
clause places an independent duty on Allstate, separate from its duty to
Swanson, to protect Washington Mutual's interest in the Property.  *See Int'l
Surplus Lines Ins. Co. v. Assocs. Commercial Corp.*, 514 So. 2d 1326, 1327
(Ala. 1987) ("Under a standard mortgage clause 'an independent or separate
contract or undertaking exists between the mortgagee and the insurer, which
contract is measured by the terms of the mortgage clause itself.  There are
accordingly in substance two contracts of insurance, the one with the
mortgagee, and the other with the mortgagor.'" (quoting 10A *Couch on
Insurance 2d* § 42:728 (rev. ed. 1982)).  And, the court also agrees that,
even if an exclusion in the Policy precludes recovery as to Swanson, under
the standard mortgage clause, Washington Mutual's interest would remain.
*See id.* at 1328 ("[W]here, as here, the loss was at least arguably within the

28

coverage afforded by insurance and the breach of the policy provision came about as a result of the wrongful act of the insured or his agent, servant, or employee, the mortgagee's interest under a standard mortgage clause will not be defeated.")  However, assuming *arguendo*, as Swanson contends, that Allstate's obligation to pay-off Washington Mutual arose at the time of loss, and that Swanson's subsequent mortgage payments to Washington Mutual constitute recoverable damages for Allstate's breach of that obligation, it remains that neither Swanson's Complaint, nor his Amended Complaint, plead a breach of contract cause of action for Allstate's failure to pay Washington Mutual, (*see generally* Doc. 1 at Ex. A; Doc. 25 at ¶¶ 10-25); *see also* Memorandum Opinion at 8 n.3, *Seagle v. Allstate Ins. Co.*, No. 05-cv-1668-SLB (N.D. Ala. filed Sept. 30, 2007), and the Scheduling Order's deadline for amending the pleadings has passed, (*see* Doc. 7 at ¶ 11).

(Doc. 43 at 9-10.)

Still, "it remains that neither Swanson's Complaint, nor his Amended Complaint, plead a breach of contract cause of action for Allstate's failure to pay Washington Mutual."  (*Id.*)  Swanson cites *Ardaman & Assoc., Inc. v. Travelers Cas. and Sur. Co. of Am.*, 2009 WL 161203, *8 (N.D. Fla. Jan. 22, 2009), for the proposition that "[a] plaintiff is not required to allege the specific paragraph of a contract that it claims has been breached."  (Doc. 48 at n. 2.)  While "[f]or better or for worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can," some factual pleading, though not exactitude, is required. *In re Southeast Banking Corp.,* 69 F.3d 1539, 1551 (11th Cir.1995).  For instance, in *Ardaman*, the court considered whether the facts alleged in the complaint were sufficient to state a claim for each element of a breach of contract cause of action.  Although the *Ardaman* court found that the plaintiff had pleaded with the requisite specificity its breach

29

of contract claim, even in the absence of an allegation related to the specific section of the

contract that was allegedly breached, the plaintiff in that case did plead the facts setting

forth its basic theory of recovery.  Specifically, the plaintiff outlined "the delays and

problems that led to the alleged material breach *of failing to pay Ardaman for its services,*

*which is asserted in Paragraph 119*."  *Ardaman,* 2009 WL 161203 at *8 (emphasis

added).  Unlike the complaint allegations in *Ardaman,* which alleged facts related to the

breach, the Complaint and Amended Complaint allegations in this case do not relate to

Allstate failing to pay Washington Mutual.[5]  (*See* docs. 1 & 25.)  Therefore, Allstate's

Motion for Summary Judgment on Swanson's claim alleging breach of contract based on

Allstate's failure to pay Washington Mutual is due to be granted.

## 2. Bad Faith

Under Alabama law, there are two ways to establish a bad faith refusal to pay an

insurance claim.  *Mut. Serv. Cas. Ins. Co. v. Henderson,* 368 F.3d 1309, 1314 (11th Cir.

2004) (citing *Employees' Benefit Assoc. v. Grissett,* 732 So. 2d 968, 976 (Ala. 1998)).  An

insurance company may be liable for either "normal" bad faith, i.e. failing to properly pay,

or "abnormal bad faith," i.e. failing to properly investigate.  *Id.* (citing *Slade,* 747 So. 2d at

306).

---

[5] Additionally, the court notes, as it did in the Memorandum Opinion denying Swanson's
Rule 56(f) Motion to Continue Summary Judgment Until After Taking of Allstate Depositions,
that Swanson, "prior to filing his Rule 56(f) Motion, . . . had not sought discovery on this issue."
(Doc. 43 at 11 n.6.)  "Indeed, neither the interrogatories nor the requests for production sought by
his Third Motion to Compel Documents specifically reference Allstate's obligation to pay
Washington Mutual, or mention the Policy's standard mortgage clause."  (*Id.*)

To establish that an insurance company committed "normal" bad faith, i.e. bad faith refusal to pay an insurance claim, the insured must prove: "(1) a breach of the insurance contract; (2) an intentional refusal to pay the insured's claim; (3) the absence of any reasonably legitimate or arguable reason for that refusal; and (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason." *Id.* (citing *Grissett*, 732 So. 2d at 976). Under subsection (3), an "arguable reason" means a "'debatable reason' . . . one that is open to dispute or question." *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982) (citing *Chavers v. Nat'l Sec. Fire & Cas. Co.*, 405 So. 2d 1, 10 (Ala. 1981)). And, unless the insured can establish that "he is entitled to a directed verdict on the [underlying] breach of contract claim," the insured cannot, as a matter of law, "have his [normal] bad faith claim submitted to a jury." *Henderson*, 368 F.3d at 1314 (citing *Grissett*, 732 So. 2d at 976).

By contrast, for an insured to establish "abnormal" bad faith, he or she "must show (1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim." *Henderson*, 368 F.3d at 1315 (quoting *Simmons v. Congress Life Ins. Co.*, 791 So. 2d 371, 379 (Ala. 2000)); *see also Slade*, 747 So. 2d at 306-07 (noting the instances in which Alabama courts have found "abnormal" bad faith). Under Alabama law, courts

have limited "abnormal" bad faith cases to those instances in which an insured showed that the insurance company:

> (1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim.

*Slade*, 747 So. 2d at 306-07.

Swanson asserts an "abnormal" bad faith claim, (*see* doc. 48 at 17), and contends that he has "presented substantial evidence that Allstate relied on an ambiguous portion of its policy as a lawful basis when it denied his claim based on the vacancy exclusion despite its knowledge of the ambiguity." (*Id.* at 17-18.) Swanson also contends, though not in certain terms, that Allstate failed to properly subject Swanson's claim to a cognitive evaluation or review because Allstate's review and evaluation "missed the crucial issue in this case – whether a fire could be considered an act of vandalism or malicious mischief." (*Id.* at 18.)

To the extent Swanson's bad faith claim is based on Allstate's failure to subject Swanson's claim to cognitive review and evaluation, Allstate is entitled to summary judgment. The undisputed facts of this case demonstrate "a thorough investigation into an indeed suspicious claim, including the referral of the claim to the Special Investigation Unit, and an independent evaluation by counsel, Sue Williamson."[6] (Doc. 43 at 15.)

---

[6] Although Allstate's reliance on counsel does not provide Allstate absolute immunity, such reliance on counsel is evidence of good faith. *See Davis v. Cotton States Mutual Ins. Co.*, 604 So. 2d 354, 359 (Ala. 1992) (considering an insurer's reliance on the advice of counsel as

What's more, Swanson's bad faith claim based on Allstate's failure to subject Swanson's claim to cognitive review and evaluation fails because Allstate did not breach the contract for insurance coverage with Swanson when it refused to pay Swanson's claim. *See Slade*, 747 So. 2d at 318 ("[W]e reject the Slades' argument that in the abnormal bad faith case . . . contractual liability is not a prerequisite to bad faith liability . . . ."). As discussed *supra*, Swanson failed to comply with a condition precedent to recovery by failing to inform Allstate of any change in title, use or occupancy of the Property.

As to Swanson's bad faith claim based on Allstate's reliance on an ambiguous portion of the Policy, it is necessary for the court once again to differentiate between Swanson's claim for personal property losses and Swanson's claim for losses to the Property itself. As to Swanson's bad faith claim based on the denial of coverage for his loss to personal property under Coverage C, the court finds that Allstate relied on an unambiguous portion of the Policy to deny Swanson's Coverage C claims. Swanson's personal property claim was denied pursuant to the vandalism during vacancy exclusion. As discussed *supra*, Coverage C is not ambiguous as to whether an intentional or incendiary fire constitutes "Vandalism and Malicious Mischief." Even assuming Coverage C was ambiguous, Swanson's bad faith claim based on Allstate's reliance on an ambiguous portion of the Policy to deny Swanson's claim for losses under Coverage C fails because Allstate did not breach the contract for insurance coverage with Swanson

_____

evidence of good faith).

33

when it refused to pay Swanson's claim.  Again, Swanson failed to comply with a condition precedent to recovery by failing to inform Allstate of any change in title, use or occupancy of the Property.

As to Swanson's bad faith claim based on the denial of coverage for his loss to the Property under Coverages A and B, the court finds that Allstate did not rely on an ambiguous portion of the Policy to deny Swanson's Coverages A and B claims. Swanson's claim for damage to the Property itself under Coverages A and B was denied pursuant to the vandalism during vacancy exclusion.  As discussed *supra*, an intentional or incendiary fire unambiguously constitutes vandalism or malicious mischief within the meaning of Coverages A and B.  And, regardless, Swanson's bad faith claim based on Allstate's denial of his claim for losses under Coverages A and B fails because Allstate did not breach the contract for insurance coverage with Swanson when it refused to pay Swanson's claim.  Again, Swanson failed to comply with a condition precedent to recovery by failing to inform Allstate of any change in title, use or occupancy of the Property.  Therefore, Allstate's Motion for Summary Judgment on Swanson's bad faith claim is due to be granted.

**3. Misrepresentation**

To establish a claim for misrepresentation, Swanson must show "(1) that . . . [Allstate] made a false representation, (2) that the misrepresentation involved a material fact, (3) that . . . [he] relied on the misrepresentation, and (4) that the misrepresentation

damaged . . . [him]." *AmerUS Life Ins. Co. v. Smith*, 5 So. 3d 1200, 1207 (Ala. 2008)

(citations omitted).  Swanson's misrepresentation claim was not briefed or argued in

opposition to Allstate's Motion for Summary Judgment.  (*See* doc. 48.)  Therefore, the

claim is abandoned.  *See, e.g., Davis*, 447 F. Supp. 2d at 1263; *Wilkerson*, 270 F.3d at

1322; *cf. Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F.3d

1301, 1326 (11th Cir. 2000) (holding that a failure to brief and argue issue at the district

court is sufficient to find the issue has been abandoned).

     In any event, the court finds that Allstate is entitled to summary judgment on

Swanson's claim alleging misrepresentation.  In the Memorandum Opinion dated

September 3, 2010, the court stated:

> Lastly, Swanson points out that "Allstate placed $110,000 of dwelling
> coverage on [his] house despite a replacement cost of $83,222."  (Doc. 39
> at 26.)  Swanson contends that, through the requested discovery, he expects
> to show that Allstate uses a software program to determine the minimum
> coverage available, yet knows that the program generates excessive
> coverage, yielding inflated premiums.  (*Id.* at 24-25.)  Swanson argues that
> these facts would preclude summary judgment on his claim for
> misrepresentation.  (*Id.* at 26-27.)
>
> . . .
>
> Although Swanson contends that "the representation is contained in the
> [Policy's] renewal notice," (Doc. 39 at 25), the plain language of that
> document dictates otherwise.  Particularly, the renewal notice specifies that
> "it is the [insured's] responsibility to ensure that each of the Limits of
> Liability shown on the Policy Declarations are appropriate," and further
> states that "[i]f [the insured] want[s] to increase or decrease any of the
> limits of liability shown on the Policy Declarations, [the insured] must
> contact [Allstate] to request such a change."  (Doc. 33, Ex. A at 15.)
> What's more, the renewal notice makes clear that "there is a possibility that

[the insured's] current limits may provide coverage *in excess* of the actual replacement cost," and actually informs the insured that "[he or she] may want to call [his or her] Allstate representative to discuss the current value of [his or her] home and the possibility of lowering [his or her] limits." (*Id.* at 17 (emphasis added).)  In short, given the plain language of the renewal notice, which specifically contemplates the scenario that Swanson cites as the basis for his misrepresentation claim, the court finds that Swanson has failed to show how additional discovery on the issue would create a genuine issue of material fact precluding summary judgment.  As a result, the court finds Swanson's fifth argument in support of his Rule 56(f) Motion to be unpersuasive.

(Doc. 43 at 15-16 (footnote omitted).)

For the same reasons the court found Swanson's fifth argument in support of his Rule 56(f) motion to be unpersuasive, the court finds that Allstate's Motion for Summary Judgment on Swanson's misrepresentation claim is due to be granted.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that Allstate's Motion for Summary Judgment, (doc. 33), is due to be granted, Swanson's Motion to Strike Exhibits of Allstate Insurance, (doc. 47), is due to be denied, and Swanson's Motion to Strike Affidavit of Michael Rocchio, (doc. 51), is due to be denied as moot.  An Order in conformity with this Memorandum Opinion will be entered contemporaneously.

**DONE**, this 3rd day of August, 2011.

SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE